```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF NORTH CAROLINA
              ASHEVILLE DIVISION
                1:07CV269-MU-02
```

```
LARRY DONNELL HARBISON,    )
     Plaintiff,            )
                           )
        v.                 )
                           )
SAM CRUMP, Sergeant at     )
  Burke County Jail;       )
RICHARD HEAD, Lieutenant   )          O R D E R
 at Burke County Jail;     )
and                        )
DWIGHT JUSTIN HUSSEY,      )
  Detention Officer at     )
  The Burke County Jail,   )
     Defendants.           )
_____)
```

**THIS MATTER** comes before the Court on Plaintiff's Complaint brought under 42 U.S.C. § 1983 (Doc. No. 1), filed July 30, 2007; on Defendants' Motion for Summary Judgment (Doc. No. 23), filed February 8, 2008; and on the Court's own motion. For the reasons stated herein, Defendant's Motion for Summary Judgment will be granted in part as to one of Plaintiff's claims and denied in part as to the other claim; and Plaintiff's surviving claim will be scheduled for trial as soon as is practicable.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The record of this matter reflects that on July 30, 2007, Plaintiff filed the instant civil rights Complaint pursuant to 42 U.S.C. § 1983. Such Complaint alleged a number of matters;

however, the only allegations which have survived to this point are as follows. In April 2006, upon Plaintiff's arrival at the Burke County Jail, Defendant Hussey allegedly told Plaintiff's fellow inmates that Plaintiff somehow had caused the termination of another guard who reportedly had been giving favorable treatment to the inmates; and that at a subsequent point during his detention at the Jail, Defendant Hussey also spread rumors that Plaintiff was cooperating with a murder investigation against a fellow inmate. According to Plaintiff, Defendant Hussey's conduct caused him to have altercations with other inmates, during which Plaintiff reportedly sustained various injuries. Last, Plaintiff alleged that Defendants Head and Crump were aware of Hussey's conduct but failed to take action either to stop Hussey or to protect Plaintiff.

The Court conducted an initial review of Plaintiff's Complaint, and on August 7, 2007, entered an Order dismissing several other persons and entities against whom Plaintiff had failed to state a cognizable claim for relief. (Doc. No. 2). As to the instant Defendants, the Court specifically advised that Plaintiff's claims that Defendant Hussey placed him in danger by spreading rumors of Plaintiff's cooperation with a murder investigation and of his participation in the termination of a permissive Jail employee, and his allegations that Defendants Head and

2

Crump were aware of Hussey's conduct but failed to take appropriate action all had survived the Court's frivolity review. Thus, the Court directed Defendants to respond to those allegations. (Doc. No. 2). To that end, on August 21, 2007, Defendants filed their Answer denying the material allegations of Plaintiff's claims.

Thereafter, on February 8, 2008, Defendants filed a Motion for Summary Judgment. (Doc. No. 23). By this Motion, Defendants argue that Plaintiff cannot prevail on his claims of deliberate indifference against them because he cannot establish that Defendant Hussey knew about his involvement in the murder investigation, or that Head and Crump were aware of Plaintiff's alleged problems with Hussey. (Doc. No. 23 at 5-7). Moreover, Defendants contend that Plaintiff has failed to allege facts to establish that he suffered harm as a result of their alleged conduct. (Id. at 7). Indeed, they contend that Plaintiff never requested or received treatment for any injuries which he reportedly sustained in fights with other inmates. (Id. at 8). Thus, Defendants contend that Plaintiff's Complaint is subject to dismissal on that basis. (Id.).

Furthermore, Defendants argue that to the extent Plaintiff's allegations could be construed as seeking redress for mental and/or emotional injuries, such a claim also would be barred under

3

the Prison Litigation Reform Act of 1995 for Plaintiff's failure to establish resulting physical harm. (Id. at 9). Therefore, Defendants contend that there are no genuine issues of material fact to be resolved and that they are entitled to judgment as a matter of law. (Id. at 1).

To support their Motion, Defendants have submitted several exhibits for the Court's review. The first exhibit is a sworn Declaration from Defendant Hussey asserting that he never informed anyone of Plaintiff's involvement with the murder investigation inasmuch as he had no knowledge of that cooperation. (Doc. No. 23-2 at 2). Further, Hussey asserts that he was not aware of Plaintiff's having requested or received medical treatment for injuries sustained during fights with other inmates during his incarceration at the Burke County Jail. (Id.).

Defendant Crump's Declaration asserts that Plaintiff never informed him that Defendant Hussey had spread any information about Plaintiff at the Jail. (Doc. No. 23-3 at 2). Crump further asserts that Plaintiff never requested protective custody due to his involvement with the murder investigation, or due to his fear of other inmates; and that Plaintiff never requested or received treatment for injuries sustained in fights with other inmates while at the Jail. (Id.).

Defendants' final Declaration is from Defendant Head. This

4

Defendant reports that he does not recall Plaintiff's having reported that Defendant Hussey told other inmates of Plaintiff's involvement in a murder investigation. (Doc. No. 23-4 at 2). Head also does not recall Hussey's having advised him of that co-operation. (Id). Indeed, Head reports that he, himself, was not aware of Plaintiff's cooperation; that he also was not aware of his suffering any injuries from fights with other inmates while at the Jail; and that he does not recall Plaintiff's having requested medical treatment for any such injuries. (Id.).

Last, in support of their Motion, Defendants have furnished the Court with a copy of the unpublished decision in Johnson v. S.C. Dep't of Corrections, et al., 2007 WL 904826 (March 21, 2007).[1] In that case, the district court granted summary judgment against a plaintiff's allegation of failure to protect due to the plaintiff's showing of only de minimis injury. Id., slip op. at *8-*9.

On February 14, 2008, Plaintiff filed his first response in

---

[1] Johnson also makes the point that the PLRA precludes claims of psychological or emotional injury "without a prior showing of physical injury." Johnson, 2007 WL 904826 at *9. Notably, however, Johnson was decided before the Supreme Court's recent decision in Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1179-80 (2010) (excessive force case reversing Fourth Circuit precedent that gave decisive weight to de minimis nature of injuries; reaffirming Supreme Court precedent requiring district courts to determine whether force was applied "maliciously and sadistically to cause harm."). Thus, to the extent that Defendants are seeking dismissal of Plaintiff's presumed claims of psychological and emotional injuries on the basis of the de minimis nature of such injuries, they are not entitled to any such dismissal.

5

opposition to Defendants' Motion for Summary Judgment. Such response seeks to counter Defendants' assertions in that Plaintiff contends that: 1) Plaintiff reported the altercations to Defendants Head and Crump and asked to be placed in protection on numerous occasions, but his requests were denied; 2) he was, in fact, placed in protective custody by another officer after several unspecified incidents with other inmates; he lost a tooth and suffered a broken finger as a result of the altercations; he attempted to seek medical attention but the requests which he submitted were discarded; and he believes that the murder investigators' notes will establish that he actually was a "key witness" in that case. (Doc. No. 26 at 2-6). Most notably, Plaintiff's response points out Defendants' clear failure to respond to his allegation concerning Defendant Hussey's initial misconduct in spreading rumors of his involvement with Hussey's co-worker's termination, or the fact that such conduct caused Plaintiff to have to seek protective custody upon his arrival at the Jail. (Id. at 4).

For the Court's review, Plaintiff also attached copies of the decisions in Skinner, et al. v. Uphoff, et al., 234 F. Supp. 2d 1208, 1210 (D. Wyo. Nov. 27, 2002) (unpub.) (Summary judgment granted in class action on inmates' claims of deliberate indifference/failure to protect where "virtually all facts and testi-

6

mony . . . [was] undisputed."); and Horton v. Cockrell, et al., 70 F.3d 397, 401(5th Cir. Dec. 12, 1995) (unpub.) (Reversing district court's dismissal of claims of deliberate indifference/ failure to protect and noting that claims could be proven by circumstantial evidence.).

On May 3, 2010, Plaintiff filed his final response in opposition to Defendant's Motion for Summary Judgment. This second response reiterates much of Plaintiff's earlier response. However, this second response reports that during the summer months of 2007, the Sheriff conducted an investigative operation at the Jail which resulted in the termination of Defendant Head and the demotion of Defendant Crump. (Doc. No. 32 at 4). Plaintiff included an attachment of an investigative interview conducted by a private agency on behalf of Plaintiff. (Id. at 7-8). Such exhibit consists of a statement from an inmate who claims to have been used as an enforcer for Defendants Head and Crump during his detention at the Jail. (Id.). The statement also reports that the inmate "was going to fight [Plaintiff]." (Id.).

Last, on May 17, 2010, Defendants filed a reply to Plaintiff's responses. (Doc. No. 33). Curiously, such reply relates exclusively to Plaintiff's allegations concerning the murder investigation, and makes no mention of his allegations concerning the Merril termination. (Id. at 2-4).

7

## II. **ANALYSIS**

### A. **Standard of Review for Summary Judgment**

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, to withstand a motion for summary judgment, the non-moving party must forecast the existence of competent evidence sufficient to reveal the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246-47 (1986).

In determining whether a "genuine issue of material fact" exists, thereby precluding the entry of summary judgment in favor of the moving party, this Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences from such evidence in his favor. Erwin v. United States, 591 F.3d 313, 327 (4th Cir. 2010). However, a non-movant cannot create a genuine issue of material fact through speculation or a compilation of inferences. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Nor can that party overcome a motion for summary judgment by relying upon allegations or denials in his own pleading. Fed.R.Civ.P. 56(e)(2). Moreover, "the mere

8

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 246-47. Rather, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Thompson v. Carlisle, 2010 WL 382044 *1 (4th Cir. Feb. 3, 2010) (unpublished). In sum, therefore, "[t]he relevant inquiry in a summary judgment analysis is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. (internal quotation and citation omitted).

### B. Deliberate Indifference

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (internal quotation and citation omitted). Indeed, "prison officials have a duty [] to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotation and citation omitted). Nevertheless, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

On the contrary, in order to be liable for inmate-on-inmate

9

violence, the victim must establish that he was "incarcerated under conditions posing a substantial risk of serious harm; and that the officers in question were deliberately indifferent to the victim's health or safety. Id. That is, Plaintiff must establish that Defendants knew of and disregarded an excessive risk to his health or safety. Id. at 837; Case v. Ahitow, 301 F.3d 605, 607 (4th Cir. 2002)("the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."); Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (the Eighth Amendment protects an inmate from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm."). Therefore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment" in violation of the Eighth Amendment. Id.; Tatum v. Shearin, 2010 WL 673195 *4 (D. Md. Feb. 18, 2010) (noting that to prevail, plaintiff must establish not that defendant should have recognized substantial risk of harm, but that he actually did perceive the risk; and that he "subjectively recognized that his actions were inappropriate in light of that risk.").

**1. Conduct concerning the murder investigation**

Plaintiff alleges that Defendant Hussey advised other inmates that he was assisting with the investigation of a murder suspect who also was housed at the Jail; that he was assaulted as a result of that disclosure; and that he advised Defendants Head and Crump of the situation and sought protective custody, but they refused to intervene or to protect him. (Doc. No. 1 at 3 and 7-8). Defendants all deny knowledge of Plaintiff's assisance and any related assaults; Defendant Hussey denies spreading any such rumors; and Defendants Head and Crump deny receiving and denying any requests for protective custody. (Doc. No. 12 at 1).

Consequently, Defendants have filed a Motion for Summary Judgment. (Doc. No. 23). In support of that Motion, Defendants have submitted sworn declarations in which they repeat the foreoing denials. (Doc Nos. 23-2 through 23-3). However, Plaintiff's Complaint does not contain any type of certification or other verification of its veracity. Nor has Plaintiff submitted his own affidavit or sworn declaration in support of his allegations. Indeed, even after the Court entered its Roseboro-type Order (Doc. No. 31) advising Plaintiff of his heavy burden in responding to Defendants' Motion for Summary Judgment and his obligation to file his own affidavit(s) or sworn statement(s) in order to demonstrate the existence of a genuine issue of material

11

fact, Plaintiff still failed to file any such document in support of his claims. Equally critically, the unsworn investigative report which Plaintiff submitted does <u>not</u> meet the requirements set forth in Fed. R. Civ. P. Rule 56(e); nor does that document establish a genuine issue of material fact as to this claim.

Based upon the foregoing, the Court finds that Plaintiff has failed to forecast any evidence to establish that there is a genuine issue of material fact in regard to his allegations concerning the murder investigation. Consequently, the Court concludes that Defendants' Motion must be granted as to this claim.

### 2. **Conduct concerning Merrill's termination**

On the other hand, the Court concludes that Defendants are <u>not</u> entitled to a summary judgment on Plaintiff's other claim. That is, in addition to his claim regarding the murder investigation, Plaintiff's Complaint alleges that shortly after his arrival at the Jail, Defendant Hussey told other inmates that Plaintiff was the cause of Officer Merrill's termination; that Merrill had been giving preferential treatment to some of the inmates; that in response to Defendant Hussey's behavior, he requested protective custody and was placed there, but only for 96 hours; that upon his return to general population he was involved in several inmate altercations from which he sustained multiple injuries; and that Defendants violated his rights by refusing his

12

continued requests for continued protective custody. (Doc. No. 1 at 3 and 7-8).

However, notwithstanding the fact that the Court's initial Order specifically identified this claim, neither Defendants' answer, their Motion for Summary Judgment nor their sworn declarations address the matter. In fact, even after Plaintiff pointed out Defendants' omission in his first response to their Motion for Summary Judgment, Defendants filed a reply which remains silent concerning this claim. Consequently, the Court finds that Defendants have not demonstrated an entitlement to a judgment as a matter of law as contemplated by Rule 56(e) with regard to this claim. Thus, the Court will schedule this claim for a trial as hereafter will be more fully explained.

As to that trial, Plaintiff first is advised that he does not have a constitutional right to attend this civil rights trial. See Price v. Johnson, 334 U.S. 266, 285-86 (1948); and Pollard v. White, 738 F.2d 1124 (11th Cir. 1984) (district court refusing to allow plaintiff-prisoner to attend his civil trial due to certain specific factors). Furthermore, the Court lacks the power, absent express statutory authority, to order the U.S. Marshal to expend federal funds in order to underwrite the expenses of an indigent litigant's civil action. United States v. MacCollom, 426 U.S. 317, 321 (1976). Indeed, the federal

government is not responsible for the payment of an indigent party's litigation expenses in a civil case where neither the United States nor its officials properly are a party to that action. See Tabron v. Grace, 6 f.3d 147, 158-59 (3d Cir. 1993).

Second, the U.S. Marshal previously, in similarly situated civil cases, estimated the cost and expenses to produce and house a plaintiff during the course of a civil proceeding at more than $1,000. Ultimately, therefore, Plaintiff will be required to pre-pay the first $1,000 of his anticipated transportation and housing expenses before his trial can be scheduled and he can be transported to this judicial district. In the alternative, Plaintiff may opt to appear at his trial via satellite or some other method as the Court deems acceptable.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (document # 23) is **GRANTED** as to Plaintiff's claim concerning the murder investigation and **DENIED** as to Plaintiff's claim concerning the termination of Officer Merrill.

2. Plaintiff is advised that the U.S. Marshal requires that he pre-pay the first $1,000 of his anticipated transportation and housing expenses before his trial can be scheduled. In the alternative, Plaintiff may opt to appear at his trial via satellite or some other method as the Court deems acceptable.

3. <u>Within thirty (30) days of the date of this Order, Plaintiff must file a document informing the Court of his desire to pre-pay the $1,000 anticipated expenses or to appear by satellite or some other method approved by the Court. Should Plaintiff fail to file such document, the Court will conclude that he has no desire to attend his trial either in person or by any other means</u>.

4. If Plaintiff opts to appear in person and pre-pay the $1,000 deposit, he must make his payment within ninety (90) days of the date of this Order.

5. Plaintiff will be entitled to a re-fund of any expenses which he pre-pays and which are not used by the U.S. Marshal.

**SO ORDERED.**

Signed: June 2, 2010

Graham C. Mullen
United States District Judge